**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: 7/22/26**

Plaintiff is directed to file its response by **Tuesday, July 28, 2026**.

BERNSTEIN & GORDON LLP
Attorneys at Law
551 Fifth Avenue, 12th Floor
New York, New York 10176-1299
Telephone: (212) 748-4800; (917) 566-5246
E-mail: rbernstein@rjblaw.com

July 20, 2026

*Via PACER and Email to FigueredoNYSDChambers@nysd.uscourts.gov*
The Hon. Valerie Figueredo, United States Magistrate Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Dinsmore Steele LLC v. Cassandra Anderson, *et al.*
Case No. 26-cv-582 (DEH) (VF)

Dear Magistrate-Judge Figueredo:

Pursuant to Your Honor's Individual Practices in Civil Cases, Part II.c.2, and Local Civil Rule 37.1, Defendants request a pre-motion discovery conference at the Court's earliest convenience because plaintiff has refused to produce documents essential to the defense. I certify that (i) a telephonic conference between counsel for the parties took place on June 24, 2026 at 2:04 p.m. (EDT); (ii) the duration of the conference was 51 minutes; (iii) the attorneys who participated in the conference were John Ray for plaintiff and Roger Bernstein for defendants; and (iv) plaintiff's position was that it would not withdraw its objections to five document requests that defense counsel sought to resolve in the conference. As to impasse (v), in the June 24, 2026 telephone conference counsel for Defendants offered to narrow two of the document requests, as subsequently noted in a deficiency letter on July 6, 2026 to plaintiff's counsel. *See* Exhibit A. On July 18, 2026 plaintiff's counsel declined – in a gratuitously vituperative letter – to withdraw plaintiff's objections to these document requests and stated that plaintiff will oppose a motion to compel. *See* Exhibit B.

Plaintiff Dinsmore Steele LLC and defendants Cassandra Anderson and her two companies, Cassandra Consulting LLC and Reimagine PEO, LLC, are participants in the Professional Employment Organization ("PEO") industry. PEOs provide HR services, such as payroll and benefit administration, for small and medium-sized companies. PEOs pay brokers a commission for referring a client for as long as that client stays with the PEO. Independent agents -- such as defendants -- who secure PEO clients for brokers are paid an agreed-upon portion of the commissions that the brokers receive from the PEOs.

This case concerns the absence of bona fide trade secrets in the PEO industry and the application of New York law to the parties' business relationship. Defendant Cassandra Anderson has worked for more than a decade in the PEO industry and has developed hundreds of contacts throughout it. In June of 2023 she entered into an independent contractor agreement to

serve as a non-exclusive agent for plaintiff Dinsmore Steele LLC ("Dinsmore"), a PEO Broker. This agreement provides for Dinsmore to pay Anderson 75% of the commission payments that it receives from PEOs when Anderson sources the client, and 50% of the commission payments Dinsmore receives from PEOs when Dinsmore initially provides the client. *See* Exhibit C, Schedule A. These commissions are paid to Anderson as long as the client remains with the PEO, regardless whether the independent contractor relationship with Dinsmore has been terminated. There are no commission advances and no other financial support from Dinsmore.

Dinsmore abruptly terminated its agreement with Anderson on December 30, 2025. In a recorded telephone call Dinsmore's COO demanded new commission terms and stated: "One of two things is going to happen before the end of the call. Either we're going to agree to move forward together or we're going to agree to sever the relationship." Exhibit D, p.6. When Anderson requested time to consider the proposed new terms, Dinsmore's COO announced that Anderson's existing agreement was terminated, and within minutes after the call ended Dinsmore terminated her access to her email account, to "Slack", and to a service called "Hubspot".

After being terminated on December 30, 2025, defendant Anderson announced the formation of her own PEO broker, defendant "Remagine PEO, LLC", by email on December 31, 2025. In this action Dinsmore claims that Anderson is violating non-competition and confidentiality clauses in the independent contractor agreement. The defendants' five document requests are for evidence essential to Anderson's defense against these allegations and for Anderson's damages for unpaid commissions as alleged in Anderson's counterclaims.

Under New York law, which is applicable under the independent contractor agreement, Anderson is not precluded from doing business with her personal clients after her agreement with Dinsmore was terminated. *BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 391-393 (1999). Personal clients are clients that were attracted solely by the opportunity to work with Anderson, who were recruited solely by her, and whose development as clients was not subsidized by Dinsmore. *Marsh USA Inc. v. Schuhriemen*, 183 F.Supp.3d 529, 532 n.3 (S.D.N.Y. 2016) (Rakoff, J.), *amended,* 2016 WL 2731588 (S.D.N.Y. May 3, 2016), citing *BDO Seidman*. Similarly, non-competition clauses do not preclude doing business post-termination with clients that an agent develops independently. *Barbagallo v. Marcum LLP*, 925 F.Supp.2d 275, 294 (E.D.N.Y. 2013) (citing New York cases), *aff'd*, 552 Fed. App'x 102 (2d Cir. 2014).

To demonstrate that the clients Anderson brought to Dinsmore are personal clients that she developed independently, defendants' Document Request No. 1, as modified, is for Anderson's initial five emails with the eighty-two personal clients that she brought to Dinsmore. Exhibit A, p.1. The initial emails will demonstrate that these clients were recruited solely by Anderson and were seeking the opportunity to be served solely by her. These initial emails are necessary for countering Dinsmore's contention that the clients came for the opportunity to be served by Dinsmore. Contrary to Dinsmore's objection, this discovery is not an effort "to obtain access to Dinsmore Steele's client information to which defendants no longer have access . . .." (Exhibit B, p.1). Anderson knows who all of her personal clients are, has their contact information, and knows their businesses and what their PEO needs are.

Defendants' Document Request No. 8 is for the monthly PEO commission statements that Dinsmore received from PEOs between June 12, 2023 *and the present*. These commission

statements are necessary for establishing defendants' counterclaim damages. They show the PEO commissions from which the amounts due to Anderson can be computed. Dinsmore's own spreadsheet shows that it has failed to pay Anderson tens of thousands of dollars in commissions for clients Anderson has brought in. Non-payment examples (with client names redacted) are in Exhibit E. The PEO statements also show whether Dinsmore has correctly reported the monthly PEO commissions it received even when commissions have been paid to Anderson. They also show the 2026 PEO commissions from which the commissions due to Anderson since termination can be computed. Dinsmore's claim that the PEO commission statements contain confidential information is patently unfounded as to the clients that Anderson brought in, and PEO commission payments for other clients can be redacted. The self-serving commission statements that Dinsmore has created are no substitute for the PEOs' statements showing actual commission amounts. Nor is this a new topic; multiple emails sought in Document Request No. 1 for Anderson's email file will show that Anderson repeatedly raised commission non-payment issues.

Defendants' Document Request No. 16 is for "Hubspot audit logs, activity reports, and other documents and communications concerning Cassandra Anderson's Hubspot login history, data access, and download activity between June 2023 and December 31, 2025." Dinsmore's complaint alleges in ¶32 that defendants obtained Dinsmore Steele's "confidential information and trade secrets, through their access to HubSpot.com, where that information was retained privately and confidentially." In light of this allegation (reiterated in other causes of action), there is no basis for refusing to produce the Hubspot audit logs for Anderson. Considering the seriousness of the allegations concerning Hubspot, defendants are entitled to production of the Hubspot login and download logs for Anderson – none of which are the same as the client information stored there. Plaintiff's offer to provide its own summary of these documents would deny defendants the evidence they need to show that they did not download data from Hubspot.

Document Requests Nos. 19 and 20 are for documents concerning the supposed "billing error" alleged in ¶ 2 of the Complaint. Dinsmore claims that a "billing error" was discovered; however, it required new commission terms and terminated Anderson when she did not immediately agree to new commission. *See* Exhibit D. The very existence of a "billing error" is in question. These documents will show what the alleged "billing error" was and whether the term was used as a pretext for changing the commission terms in the parties' agreement.

Plaintiff's General Objections seek to prevent full production of responsive documents. For instance, Dinsmore states that "… in producing responsive, non-privileged documents, Plaintiff will only produce documents sufficient to constitute or identify the issue or information requested" (General Objection No.14). Defendants submit that full production of responsive documents should not be compromised by these and other General Objections.

Respectfully submitted,

*s/ Roger Bernstein*

Roger J. Bernstein
*Counsel for Defendants*

Cc. John Ray, Esq., *Counsel for Plaintiff*